ADOLPHUS ERB *et al.* (LUBKE, Assignee), Respondents, *v.* THE KEOKUK PACKET COMPANY, Appellant.

1.  *Common Carriers — Evidence — Way - Bill — Manifest.* — Action was brought to recover the value of three boxes of goods shipped at St. Louis, on board of one of defendant's boats, to be delivered at the city of Leavenworth.

These boxes were included in the bill of lading, and shipped, but not included in the receipt given at the point of destination. The court properly excluded a way-bill on the Hannibal and St. Joseph railroad, and the manifest of a steamboat plying between points on the line over which the goods had to pass, offered to explain the discrepancy between the receipt and the bill of lading.

### *Appeal from St. Louis Circuit Court.*

This was an action for an alleged breach of a contract of affreightment, in the non-delivery, at their destination, of three boxes of merchandise. The goods in controversy, together with others, were shipped at St. Louis, on one of the boats of the packet company, to be transported to Hannibal, thence by rail to Weston, and by boat to Leavenworth, their destination. The testimony for plaintiff tended to show that all the goods called for by the bill of lading were delivered to defendant on board one of its boats at St Louis, and that the three boxes in controversy were not delivered at Leavenworth. The plaintiff also read in evidence a receipt of the railroad agent at Leavenworth for freight on goods, which did not include the goods in controversy; he also read invoices of the goods.

Lyons, clerk of the Hannibal and St. Joseph railroad at Leavenworth, testified for defendant, to the effect that he delivered to Erb, plaintiff, all the goods received at Leavenworth for Sellers & Co., the consignees, in the fall of 1864; that he, Erb, checked them off as they were delivered, saying they were all right; and that he heard no complaint about lost goods for a year or more afterward; also, that goods were received about the same time for one Frankel, and that three boxes of Sellers & Co.'s goods got into or among those of Frankel, which were taken and delivered to Erb. This witness contradicts Erb as to his statement that the goods would come by the next train.

N. Mulliken, secretary of the packet company, testified that claims against the company for lost goods were always promptly presented; that he did not hear of plaintiff's claim until June, 1866, nearly two years after the alleged loss occurred; and says the company paid plaintiff a claim for oysters and tobacco about that time.

Willis, agent of the road at Leavenworth, testified in substance

that, after the goods were delivered to plaintiff by Lyons, Erb came to his office and paid him the freight, each giving a receipt —one for the freight, the other for the goods; that the list of articles was taken from a manifest of the steamboat on which the goods came from Weston; that if there was any mistake in copying from the way-bill to the manifest, the same mistake would occur in the receipts; that no complaint was made for goods short.

Chase, freight agent of the road at St. Joseph, testified that the way-bill of the railroad is copied into the manifest of the boat at Weston; the copying is generally done before the goods reach Weston; that the manifest and way-bill ought to agree. Examined manifest, and said it was made by him from the way-bill, and that a mistake was made in copying the manifest from the way-bill. Defendant offered to prove by this witness that there were articles on the way-bill that were not on the manifest, to which plaintiff objected, and the objection was sustained. Defendant then read the receipt of Sellers to the Hannibal and St. Joseph railroad, the same referred to by Willis. Defendant offered the way-bill of the Hannibal and St. Joseph railroad, and the manifest of the steamer from Weston, for the purpose of explaining the receipts testified to by Erb and Willis, and to show why the boxes sued for were not included in these receipts, and to corroborate the witness Chase. These papers were excluded. The evidence being closed, the court instructed the jury, on motion of plaintiff, that if the goods in controversy were not delivered to L. Sellers & Co., or to their agents, by defendant, at the place of destination called for by the bill of lading, then they must find for the plaintiff, and assess the value of goods, with interest at six per cent. from commencement of suit, as plaintiff's damages. The verdict was for plaintiff, in damages to the amount of $993; and the case comes here by appeal.

*Ewing & Holliday*, for appellant.

I. The court refused to permit proper and legal testimony to go to the jury. The way-bill of the Hannibal and St. Joseph Railroad Company was testified to by Chase as being the way-bill of plain-

tiff's goods over the road. It was not objected to as being incorrect or not being proved to be correct. Chase, for defendant, testified that he was clerk for the road at Weston; that it was his duty to make out, and that he did make out, the manifest of the steamboat that carried the freight from Weston to Leavenworth; that he generally made out these manifests from the way-bills of the road, copied them before the goods arrived at Weston; that he copied the manifest of the plaintiff's goods from the way-bill of the road; that he did not see any of the goods (the three packages sued for by plaintiff were on the way-bill, but not on the manifest). He testified that he made a mistake in copying; that the manifest and the way-bill ought to agree, and the fact that they did not agree was simply a mistake of his. The witness Willis, who gave the receipts to plaintiff that he read in evidence, testified that he copied the list of goods in the receipts from the manifest of the boat, and of course copied the errors by omitting the three packages that Chase had accidentally omitted on the manifest. The way-bill and manifest were offered in evidence to the jury that they might, by an inspection of the papers themselves, see how the mistake was made. It is true this evidence would not have proved a delivery of the goods to the plaintiff, but it would have completely destroyed all weight given to the receipt — it would have rebutted that testimony. The defendant was entitled to this sort of testimony under the circumstances of the case. A railroad delivers thousands of packages and different parcels of freight. After a few months it would be almost impossible to prove the exact number of packages delivered. Good faith required the plaintiff to take more active steps to make known his loss. He has voluntarily placed himself under suspicious circumstances, and the defendant certainly ought to have been permitted to show that the three articles or packages sued for were omitted from the receipt by mistake. The man who wrote the receipt never saw the goods; he simply copied the manifest, and on this ground it was competent evidence to explain the receipt copied from it; and on the same ground the way-bill was competent evidence. It makes no difference, so far as this point is concerned, whether the way-bill was correct or not; it was the origin of the manifest, and this was the foundation for the receipt;

and it was to explain the receipt alone that they were offered in evidence, and they were competent for that purpose. With these papers in, we believe the jury would have found for the defendant.

*Lee*, and *Hitchcock & Lubke*, for respondents.

I. No testimony was offered to show that the way-bill offered in evidence was correct. They are merely private memoranda, and cannot bind plaintiff in any manner whatever as evidence. The witness Chase stated that he did not know how many boxes and packages were actually received at Weston; and the fact that all the goods called for by the bill of lading and way-bill were received at Weston was not shown. Therefore, Chase was copying from a paper which he himself did not know to be correct.

II. If the way-bill and manifest were introduced by defendant for the purpose of showing that the witness Chase had made a mistake, then we say there was no need of such proof, because the jury had an uncontradicted verbal statement of that from Chase. If to show that there was a mistake in the receipts, then there was no testimony to show that the goods were actually at Weston, and this testimony was incompetent.

III. The testimony of Chase that the manifest was correct, except as to this one particular mistake, amounts to nothing, and does not furnish any ground for its being admitted as evidence, because it was necessarily predicated on the way-bill, and that was not proven to be correct, as already stated. We make the same objections to the introduction of the manifest as those made to the way-bill.

FAGG, Judge, delivered the opinion of the court.

This action was brought to recover the value of three boxes of goods shipped at the city of St. Louis, on one of the defendant's boats, to be delivered at the city of Leavenworth. The loss of the goods in question being established to the satisfaction of the jury at the trial, the respondents had judgment for the amount claimed, and an appeal has been duly prosecuted to this court.

At the instance of the plaintiff below, the jury was directed, upon satisfactory proof of the fact that there was a failure to

deliver the packages at the place designated in the contract of affreightment, to find for the plaintiff and assess his damages at the value of the goods. The propriety of such an instruction can not be questioned. It presented really the only issue that the jury was called to pass upon, and its form was unobjectionable. The chief ground of objection, however, to the action of the court below, as presented by the argument of appellant's counsel, is the exclusion of testimony. There seems to be no controversy about the fact that the goods in question were included in the bill of lading and shipped as alleged in the petition. These three boxes, however, were not included in the receipt given at the point of destination. The appellant, as it is shown by the bill of exceptions, offered in evidence a certain way-bill on the Hannibal and St. Joseph railroad, as well as the manifest of a steamboat plying between Weston and Leavenworth—these being portions of the line over which the goods had to pass—to explain the discrepancy between the receipt and bill of lading.

The court committed no error in excluding such evidence. These papers constituted no part of the contract for the delivery of the goods. However useful they may have been to the parties operating these different means of transportation, they ought not to affect the rights of the respondents. To permit carriers thus to manufacture evidence for themselves would establish a practice contrary to the well-known principles of law, and one that might be extensively used to the injury of shippers.

The whole case depended upon a question of fact, and we see nothing in the record that can authorize this court to interfere with the finding of the jury. The judgment is therefore affirmed. The other judges concur.